# CRIMINAL CASES.*

## COMMONWEALTH *vs.* PATIENCE COOPER.

Declarations made by a deceased person when he believed that he should not recover may be admitted in evidence, although he lived seventeen days after making them.

After evidence that the defendant in an indictment has requested a witness to swear falsely to facts tending to prove an *alibi*, he cannot be allowed to show that upon a full investigation the selectmen of the town where he lived had before that time assured him that they were satisfied of his innocence.

Declarations of the defendant in an indictment to one who was searching his house after the commission of the crime are not admissible in his own favor.

If dying declarations have been admitted to prove the identity of the defendant as the person who committed a crime, evidence is admissible in reply to show that the deceased had met and talked with persons with whom he was well acquainted, mistaking them at the time for other persons whom they did not resemble, and that he was in the habit of thus mistaking persons.

INDICTMENT for manslaughter in killing Phebe Fuller by striking her upon the head with a certain instrument called a "fid."

At the trial in the superior court, before *Brigham*, J., it appeared that Phebe died on the 12th of December 1860 in consequence of wounds and injuries inflicted upon her by some

---

\* METCALF, J. sat at the hearing of the criminal cases.

person at her home in Nantucket, on the evening of November 22, 1860. John H. Sherman, the physician who attended her, testified that on the morning of the 25th of November she told him that she should never be any better, or should never recover; that he told her he hoped she might, that she was better; and that she replied that she had received a mortal injury Nathaniel Fitzgerald, called as a witness on the part of the Commonwealth, testified that a little after noon on the 25th of November he called to see Phebe; that she said she could not live, and had sent for him to make one request, and said: " I cannot live, let no one follow me to the grave; I am principled against it." The witness was then allowed to testify, under objection, that Phebe stated to him that Patience Cooper committed the deed; that she came in and said, " How do you do ? I have come to pay my bill," and the deceased got up to snuff the wick of the lamp, when Patience struck her.

There was evidence on the part of the Commonwealth that shortly after the 22d of November the defendant asked William Simmons if he would not go to court and swear that on the evening of that day he went through her yard and saw a light in her house, saying that there would be no harm in it. To control this evidence, the defendant offered evidence that before the time when she said this to Simmons the selectmen of Nantucket had assured her that upon a full investigation they were satisfied of her innocence; but the evidence was rejected.

Alfred Macy, one of the selectmen, and a witness for the Commonwealth, testified on cross-examination to a search and examination of the defendant's house and its contents; and the defendant offered to prove by him her declarations to him at the time of this search as to where she was on the evening of November 22; but the evidence was rejected.

The defendant offered to prove by several witnesses with whom Phebe was well acquainted that she had met them and talked with them, mistaking them at the time for other persons whom they did not resemble, and that she was in the habit of thus mistaking persons; but the evidence was rejected.

plain intention, or a necessary implication. 2 Jarman on Wills, 553, 559. 2 Williams on Executors, (4th Amer. ed.) 1547 4 Kent. Com. (6th ed.) 421. *Hewes* v. *Dehon*, 3 Gray, 207. *Cumberland* v. *Codrington*, 3 Johns. Ch. 272. *Bootle* v. *Blundell*, 1 Meriv. 219. *Ancaster* v. *Mayer*, 1 Bro. C. C. 460. *Woolstencroft* v. *Woolstencroft*, 6 Jur. (N. S.) 1170. *Lawson* v. *Hudson*, 1 Bro. C. C. 58. In this case, there is a strong expression of intention to be gathered from the face of the will that the estate should be taken subject to the mortgage. The setting apart of just enough bank stock, at its par value, to meet the mortgage, and the express direction that the incumbrance on the stock shall be paid, while no direction is given to pay the incumbrance on the land, are very decisive. This was not the debt of the testator originally, and had never become his, in any such sense as to rest as a charge upon his personal estate. *Ancaster* v. *Mayer*, 1 Bro. C. C. 454; S. C. 1 White & Tudor's Lead. Cas. in Eq. 505, and English and American notes, where the authorities are collected. *Howel* v. *Price*, 1 P. W. 290, *n.* *Palmer* v. *Hendrie*, 28 Beav. 341. *Gould* v. *Winthrop*, 5 R. I. 319.

BIGELOW, C. J. Where a mortgage debt is not the personal debt of a testator, but of a previous owner of the estate by whom it was conveyed to the testator subject to the mortgage, such debt constitutes a primary charge on the land. But the burden of it will not be placed on the land, where the continuance of such charge would be repugnant to some of the provisions of the will or operate to defeat them. Whenever it appears to have been the intention of the testator that a devise of real estate, which is subject to a mortgage made by a third person, shall take effect so that the devisee shall receive and hold the same discharged of such mortgage, equity will require that the property of the testator shall be so marshalled as to carry such intention into effect, and the mortgage debt in such case will be held to form a proper charge upon the personalty. *Cumberland* v. *Codrington*, 3 Johns. Ch. 229, 257, 272. *Rogers* v. *Rogers*, 1 Paige, 188. *Hewes* v. *Dehon*, 3 Gray, 206, 208.

It seems to us that this case comes within the principle last stated, and that the continuance of the charge of the mortgage

on the house and land devised in trust for the benefit of Mrs. Bishop and her daughter would tend essentially to impair if not entirely to defeat the trust declared in respect thereof in the third clause in the will. If a different construction of the will should prevail, and the mortgage be held to be a charge on the real estate, the *cestuis que trust* would not receive the benefit or enjoy the *quantum* of estate which the testator manifestly intended to give them. Mrs. Bishop could not occupy the house or have the use and benefit of it during her natural life, on payment of the taxes only; she would be obliged to pay in addition a large sum annually for interest on the mortgage debt, until the principal should become due; the whole of the property — the bank stock and the house — could not be held and managed as a trust fund for her benefit; if she continued to occupy the house, there would be no net income to pay over to her; if she paid the principal of the mortgage debt, when it fell due, it would absorb nearly all the personal estate, which was given in trust for her benefit; if the debt was so paid out of the trust fund, it would be impossible to convey and deliver " said real and personal estate " to her daughter on the decease of the mother, and a like result would follow, if the mortgage was not paid and a foreclosure of it should take place. Such results would defeat the intent of the testator, which was to give to the *cestuis que trust* the beneficial use of the entire property devised in trust for their benefit.

This conclusion is fortified by the evidence, which shows that these objects of his bounty had for a long time constituted members of his household, and that he would naturally desire to continue to them the comfort of a home after his decease. These facts may be considered for the purpose of placing those who have occasion to interpret the will in the situation of the testator.

Great stress is placed by the learned counsel for the residuary legatees on the fact, that an express provision is made by the will for the payment of a debt for which the bank stock devised in trust was pledged by the testator in his lifetime, and that no similar provision is inserted for the payment of the mortgage on

instructions of the court as to the payment of a mortgage upon an estate devised to him in trust.   The material portions of the will were as follows :

" *Second.*   I give to Mrs. Sophia Bishop, of Boston aforesaid, who has for so long resided in my house and faithfully cared for me, all my apparel, my household furniture, bed and table linen ; the same being in the house I own and occupy in Dwight Street, in said Boston.

" *Third.*   I give to William T. Andrews, Esquire, aforesaid, my house and land in Dwight Street, in the said Boston, which I now occupy ; and also my shares of the capital stock of the Globe Bank in Boston, valued, at their par value, at fifty-six hundred dollars ; to hold and manage the same in trust:

" First, To permit the said Sophia Bishop to occupy and have the use and benefit of the said house in Dwight Street during her natural life, she paying the taxes thereon assessed while she shall so occupy the same; and,

" Secondly, To hold and manage the whole of the said property as a trust fund, subject to her right to occupy the house as aforesaid, if she shall wish to do so ; and to collect and to pay over to her, on her receipt therefor, the net income thereof semi-annually during her natural life; and,

" Thirdly, Upon her decease, to convey and deliver the said real and personal estate and trust fund to Jane Gove Bishop, daughter of the said Sophia Bishop, free and discharged from all trusts ; to have and to hold the same to her and her heirs and assigns forever.

" *Fourth.*   My bank stock aforesaid being under pledge and security for the payment of four thousand dollars, or thereabouts, I direct my executor to pay the whole sum for which it is pledged, as soon as it can conveniently be done, so that the said bank stock may be free from incumbrance; such payment to be made out of property not specifically herein devised."

The residue of the estate was given to the nephews and nieces of the testator.

The parties agreed upon the following facts, so far as the same might be competent and material : The testator died in

March 1860, unmarried and without issue, possessed of real and personal property amounting in all, after payment of debts, to about $60,000. He purchased the house in Dwight Street in May 1857, for $8500. It was then subject to a mortgage for $5600 and interest, which formed part of the consideration of the purchase ; and he subsequently paid the interest thereon. Mrs. Bishop kept his house from 1837 until his death, and took care of him and his rooms and clothing, and boarded him, receiving for all these services from twenty-five to forty-two dollars a month. He knew that the united property of Mrs. Bishop and her daughter had at no time exceeded $1300. The house in Dwight Street was purchased and fitted up in accordance with their choice and recommendation, and they lived in it as a home.

. Upon these facts, the case was reserved for the determination of the whole court.

*H. Gray, Jr.,* for Mrs. Bishop and Miss Bishop. Even if the testator had died intestate, the mortgage, having formed part of the consideration of the purchase, should be charged on his personal estate, to the exoneration of the land. *Seaver* v. *Lewis,* 14 Mass. 87. *Hewes* v. *Dehon,* 3 Gray, 206. 1 Story on Eq. § 576. 2 Jarman on Wills, 558, 561–564. *Parsons* v. *Freeman,* Ambl. 115 ; S. C. 2 P. W. 664, *n. Rochfort* v. *Belvidere,* Wallis & Lyne, 49, 50 ; S. C. 5 Bro. P. C. (2d ed.) 299, 311. *Billinghurst* v. *Walker,* 2 Bro. C. C. 608. *Oxford* v. *Rodney,* 14 Ves. 424. 1 Sugd. Vend. (9th ed.) 188. 1 White & Tudor's Lead. Cas. in Eq. 533. *Hoff's Appeal,* 24 Penn. State R. 205. *Thompson* v. *Thompson,* 4 Ohio State R. 350. Such was the intent of the testator, on the face of the will. *Cumberland* v. *Codrington,* 3 Johns. Ch. 272. *Hewes* v. *Dehon,* and *Thompson* v. *Thompson, ubi supra. Williams* v. *Bradley,* 3 Allen, 280. This construction is fortified by the facts agreed, which are competent for the purpose of placing the court in the situation of the testator. *Williams* v. *Bradley,* 3 Allen, 280. *Tucker* v. *Seamen's Aid Society,* 7 Met. 205.

*I. F. Redfield,* for the residuary devisees. The will itself contains no direction and indicates no intention that the mortgage shall be paid by the executor. There must be in the will a

denies that he made the contract, if the denial is not fraudulent. And we are of opinion that in the present case the matter had become involved in so much doubt that the defendant might in good faith deny that there was a binding contract in existence. There was a dispute as to the terms of the contract, and as to its performance by the plaintiffs on their part. The defendant gave early notice that he denied its existence, on the ground that the plaintiffs had not accepted his offer. And though we find that it had been completed and was binding, and was performed by the plaintiffs, and constituted a trust, we cannot regard the defendant as guilty of any fraud in setting up these objections. Nor had he, when the bill was filed, in any respect broken his contract. He had proceeded to prove the will; and, for aught that appeared or was alleged, he was proceeding to administer the estate.

But the bill contains an allegation that he is about to depart out of the limits of the United States to some foreign country, and this allegation is denied. There is no prayer for any specific relief on account of this fact, such as is usual in such cases, but merely the general prayer for relief. And all that seems to be proper is, that the trust shall be declared in conformity with the opinion herein stated, and the bill retained for further direction; for when a trustee is about to leave the country, a court of equity will give such protection to the interests of the *cestui que trust* as the exigency of the case may require, and will retain a bill for future action.

The following decree was entered :

This case came on to be heard and was argued by counsel, and the court having considered the same do find and declare that a concluded agreement was made between the plaintiffs on the one part and the defendant on the other part, as is stated in the said bill, the terms whereof appear in and by the letter of the defendant of the date of the 24th day of April A. D. 1860, which is set out in the said bill, and that the plaintiffs are entitled to the specific performance thereof, and that by force of the said agreement the defendant became charged with the trust

of executing the said agreement; and that the defendant being about to leave the United States, without an intention to return, and having actually departed into foreign parts soon after the filing of the bill, and the plaintiffs being remediless by reason thereof save by the said bill, the court doth retain the same for the purpose of giving the relief to which the plaintiffs are justly entitled. And it is ordered that the plaintiffs have leave to apply to the court for such further directions as may be needful to compel the specific performance of the said trust.

The parties thereupon filed a written agreement, stating that the damages to which the plaintiffs were entitled under the foregoing decree were agreed to be $22,174.19, including costs; and a further decree was made, reciting the above agreement, and ordering and decreeing that the said sum is the amount which the plaintiffs are entitled to recover, and that the defendant pay the same.